IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

STEPHANIE L. GLOVER,          :

    Plaintiff,                :

vs.                           :   CA 08-0291-C

MICHAEL J. ASTRUE,            :
Commissioner of Social Security,

    Defendant.                :

### MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits. The parties have consented to the exercise of jurisdiction by the undersigned, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Doc. 17.) Upon consideration of the administrative record, plaintiff's proposed report and recommendation, the Commissioner's brief, and the parties' arguments made at the October 29, 2008 hearing before the court, it is determined that the Commissioner's decision denying benefits should be reversed and remanded for further proceedings not inconsistent with this decision.[1]

Plaintiff alleges disability primarily from an on-the-job back injury which

---

[1] Any appeal taken from this memorandum opinion and order shall be made to the Eleventh Circuit Court of Appeals, as the parties have previously agreed. (Doc. 17.)

1

allegedly causes Plaintiff disabling levels of pain. The Administrative Law Judge (ALJ) made the following relevant findings:

> **2. The claimant has not engaged in substantial gainful activity since April 5, 2005, the alleged onset date (20 C.F.R. 404.1520(b) and 404.1571 *et seq*.).**
>
> **3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, scoliosis, obesity, hypertension, sleep apnea, lumbar radiculitis and bilateral carpal tunnel syndrome (20 C.F.R. 404.1520(c)).**
>
> **4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526).**
>
> **5. After careful consideration of the entire record, the undesigned finds that the claimant has the residual functional capacity to lift up to 15 pounds; occasionally carry up to ten pounds; sit for up to six hours; stand or walk for up to four hours with occasional bending, squatting, crawling, climbing or reaching; and no use of her arms for repetitive action such as pushing or pulling of arms controls and fine manipulation.**
>
> In making this finding, the undersigned considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p. The undersigned also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.
>
> . . .
>
> The claimant testified that she last worked on April 5, 2005. She was injured on the job after lifting boxes. The claimant

indicated that Dr. Ray treats her for pain in her back, neck and shoulders. She indicated that she takes pain medications and has utilized a TENS unit to alleviate her pain. The claimant testified that the pain medication, Oxycodone, makes her sleepy.

She indicated that she has sleep apnea and has used a CPAP machine since 2005. She expressed that she gets three hours of sleep per night. The claimant indicated that her medications make her nauseous and give her acid reflux. In addition to the foregoing, the claimant indicated that she has carpal tunnel syndrome in both hands. Dr. Fleet prescribed braces for the claimant to wear on both hands. The claimant expressed that she drives only when she has to do so. Her daughter cooks, and helps dress and bathe her. The claimant indicated on a Physical Activities Questionnaire form that she does very little in terms of household chores. She is able to do the dishes and shop; however, when doing dishes she must sit on a barstool, and when shopping she makes sure the groceries are not overloaded in bags. The claimant indicated that she is only able to shop for twenty minutes. Finally, the claimant expressed that her daughter helps her with most household chores.

After considering the evidence of record, the undersigned finds that the claimant's medically[-]determinable impairments could reasonably be expected to produce some of the alleged symptoms[,] but that **the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible**.

The record reflects that the claimant was injured on the job on April 5, 2005. Dr. Joseph Ray examined the claimant and diagnosed her as having a subacute lumbar strain. He noted that an MRI of the claimant's back did not show "anything dramatic." On July 15, 2005, Dr. Ray reviewed the results of a four[-]level lumbar discography test and indicated that he did not see any specific identification site for the origin of the claimant's pain. Dr. Ray indicated [that] the radiologist[']s report had found that there were no annular tears. The record reflects that the claimant participated in physical therapy, pool

therapy, utilized a TENS unit, as well as took pain and relaxant medications, to try to alleviate her symptom[s] of pain.

Dr. William Fleet, a neurologist, treated the claimant in conjunction with Dr. Ray, and recorded her complaints as to radiating pain. On May 12, 2006, he recorded that nerve conduction studies of the claimant's upper extremities had revealed that the claimant had moderate carpal tunnel syndrome on the right, and borderline on the left. Dr. Fleet wrote prescription notes on two occasions[,] indicating that the claimant would be unable to work on February 16, 2006[,] until further notice, and on May 17, 2006 through May 31, 2006. The undersigned notes that he considered Dr. Fleets [sic] prescription notes[,] which indicated that the claimant would be unable to work from February of 2006 through May 31, 2006, and notes that his prescription opinions are of little help as to a determination of the claimant's functional capabilities[,] as they are conclusory and do not provide any insight as to the claimant's capabilities and limitations. In addition, Dr. Fleet's treatment notes do not add any clarity to the claimant's capabilities during this time. Dr. Fleet did not record that the claimant had any limitations or restrictions as to any activities in treatment notes. Finally, the undersigned finds that Dr. Fleets [sic] conclusory statements as to the claimant's inability to work an issue that is reserved to the Commisioner [sic].

On February 6, 2007, Dr. Ray agreed to have the claimant tested for her work capacity and completion of a functional capacity evaluation. On March 8, 2007, Stephanie Harle, a physical therapist, examined the claimant and opined that the claimant could perform sedentary work. On April 9, 2007, Dr. Ray reviewed the report and indicated that he would report that the claimant was suitable for sedentary work. He noted that he would perform further diagnostic work to try and determine a source of her pain. He scheduled water therapy and further testing.
On April 12, 2007, a CT scan of the claimant's lumbar spine returned to reveal no evidence of significant annular bulge [sic] or tear levels from T12 through S1. On the same date, a

provocative discography from L5-S1 through T12-L1, [sic] revealed no specific pain generators as a source [sic] of the claimant's chronic lower back pain involving the buttocks, and hips and legs [sic].

On April 27, 2007, Dr. Ray noted in treatment notes that none of the provocative discograms [sic] has been positive and the only diagnosis that "we could come up with thus far" was a chronic lumbar strain. He recommended muscle stimulation, a referral to water therapy and a lumbar corset. By June of 2007, Dr. Ray indicated in treatment notes that he did not have any other treatment to offer the claimant. He indicated that he did not do chronic pain control. On July 24, 2007, Dr. Ray completed a Clinical Assessment of Pain form (Exhibit 21F). He indicated that the claimant had an underlying physical condition that caused the claimant's pain, "chronic disabling lumbar pain." He opined that the claimant's pain would distract her from adequately performing daily activities or work, and greatly increase to cause distraction from task or total abandonment of task. Dr. Ray opined that the claimant would experience side effects from pain or drugs which claimant had been prescribed[,] Tylox and Norco 10 medications. Dr. Ray indicated that the claimant would be consulting with Dr. Amy Phalen in the next year. Finally, Dr. Ray opined that the claimant had restrictions as to no heavy lifting, bending, stair climbing or squatting. **The undersigned does not find that Dr. Ray's assessment is entitled to determinative weight herein, as it is not supported by his own treatment records or the record as a whole.** Dr. Ray did not indicate in treatment records that the claimant had any restrictions as to her activities or had experienced any side effects from medications. In fact, his treatment notes reflect that he had opined that the claimant would be able to perform work at a sedentary level of exertion. In addition, his treatment notes reflect that he could not find an objective source of the claimant's pain, although he believed that one existed. Dr. Ray treated the claimant conservatively with pain medications, water therapy, braces and muscle stimulation therapy. Finally, Dr. Ray indicated in treatment notes that he did not "do chronic pain control" and would refer the claimant to Dr. Phalen for further care. For

all of the foregoing, the undersigned finds that Dr. Ray's assessment is not entitled to determinative weight herein.

On April 26, 2007, Dr. Andre Fontana, an orthopedic specialist, examined the claimant and submitted a narrative report and Physical Capacity Evaluation to the record (Exhibit). He noted that the claimant had carpal tunnel syndrome [sic] and relayed that she wore splints at night. He indicated that she ambulated with a cane in both hands. Dr. Fontana recorded that the claimant took Norvasc, Talwin, Vistaril and Darvocet medications. He recorded that x-rays of the claimant's lumbar spine showed mild left-sided scoliosis and mild arthritic changes of the facet points. He diagnosed the claimant as having degenerative disc disease of the lumbar spine, chronic lumbar strain and possible mild carpal tunnel syndrome. Dr. Fontana opined that the claimant was limited to no lifting over 10 to 15 pounds; occasionally carrying up to ten pounds; sitting for up to six hours; standing or walking for up to four hours with occasional bending, squatting, crawling, climbing or reaching; and no use of her arms for repetitive action such as pushing or pulling of arms controls and fine manipulation. **The undersigned herein has assigned Dr. Fontana's assessment significant weight herein [sic], as he is a specialist in the field of orthopedics and his opinion is most consistent with the record as a whole.** The record reflects that medical tests have not found an objective cause for the claimant's complaints as to chronic pain. The tests have indicated that the claimant has mild arthritic changes of the facet joints of the lumbar spine and mild left[-]sided scoliosis. Treating physicians have prescribed rather conservative car to treat the claimant's conditions, and have opined that she could perform sedentary[-]type work. She has been prescribed pain medications, water therapy, muscle stimulation therapy and braces for her back and hand. Finally, the undersigned finds significant that treatment notes did not record that the claimant was significantly limited as to her performance of any activities. The record reflects that she was able to drive a car, perform light household chores and shop[,] despite limitations from her impairments.

**6. The claimant is unable to perform any past relevant**

**work (20 CFR 404.1565).**

The claimant has past relevant work as a stock clerk, bus driver, forklift operator and inventory clerk. The vocational expert testified that these jobs were semi-skilled and performed at an exertional level which exceeds the claimant's residual functional capacity as set forth herein. Accordingly, the claimant is unable to perform past relevant work.

**7. The claimant was born on January 15, 1963 and was forty-two years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563).**

. . .

**9. The claimant does not have any transferable skills from her previous employment (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).**

**10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).**

The [ALJ] asked the [VE] whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors[,] the individual would be able to perform the requirements of representative occupations such as: call out operator-classified [sic] as sedentary and unskilled with 48,000 jobs available nationally and 500 in the State of Alabama; school bus monitor-classified [sic] as light and unskilled with 48,000 jobs available nationally and 600 in the state of Alabama; school crossing guard-classified [sic] as light and unskilled with 58,000 jobs available nationally and 1100 available in the [s]tate of Alabama[,] and surveillance monitor-classified [sic] as light and unskilled with 43,000 jobs available nationally and 500 jobs available in the [s]tate of Alabama.

> The [VE] identified [sic] that there were a total of approximately 1,000,000 jobs available nationally and 200,000 jobs available at a light level of exertion. He identified that there were 100,000 sedentary jobs available nationally and 2,000 sedentary jobs available in the [s]tate of Alabama.
>
> The undersigned notes that other questions were posed to the [VE] that were based on assumptions as to the validity of the claimant's testimony regarding symptoms found by the undersigned to be not fully credible and not supported by objective testing or the record as a whole. The undersigned therefore finds the [VE's] response to same of no probative value to a disposition in this matter.
>
> Based on the testimony of the [VE], the undersigned concludes that, considering the claimant's age, education, work experience, and [RFC], the claimant has been capable of making a successful adjustment to other work that exists in significant numbers in the national economy.
>
> **11.  The claimant has not been under a disability, as defined in the Social Security Act, from April 5, 2005 through the date of this decision (20 CFR 404.1520(g)).**

(Tr. 16-21 (emphasis added).)

## **DISCUSSION**

In all Social Security cases, the claimant bears the burden of proving that she is unable to perform her previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986).  In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history.  *Id*. at 1005.  Once the claimant meets this burden, it becomes the

Commissioner's burden to prove that the claimant is capable, given her age, education, and work history, of engaging in another kind of substantial gainful employment which exists in the national economy.  *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985.)

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny the claimant benefits on the basis that she retains the residual functional capacity (RFC) to perform work at the sedentary level of exertion, based on Dr. Fontana's medical records, is supported by substantial evidence.  (Tr. 21-22.)  "Substantial evidence" is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). As the Eleventh Circuit itself has stated, when determining whether substantial evidence exists, "we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision."  *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

In this case, the ALJ has relied upon testimony from a VE to determine that the claimant can perform jobs that exist in significant numbers in the national economy, a reliance that Plaintiff clearly believes was in error.  Specifically, Plaintiff feels that the ALJ improperly translated Dr. Fontana's records into an RFC assessment before finding that jobs exist in the significant numbers in the national economy that Plaintiff can perform, as the restrictions the doctor placed on Plaintiff's physical ability preclude her

from actually obtaining the only viable job listed by the vocational expert.[2] (Doc. 14, p. 2.) Because the undersigned agrees with Plaintiff's contention, there is no need to address plaintiffs other assignments of error. *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985) ("Because the misuse of the expert's testimony alone warrants a reversal, we do not consider the appellant's other claims.").

Because the ALJ found Plaintiff's subjective complaints "not entirely credible" and viewed Dr. Joseph Ray's report as unsupported by his own treatment records, he instead placed his primary reliance (concerning Plaintiff's RFC) on the opinion and evidence of Dr. Andre Fontana. (Tr. 18-21.) The problem with this, however, is that Dr. Fontana's findings are actually more restrictive of Plaintiff's activities than the ALJ's assessment *based* on those findings, a problem that becomes particularly acute when considering the evidence from the other healthcare professionals on record.[3] In his findings of fact, the ALJ claims that Dr. Fontana "opined that the claimant was limited to

---

[2] The government admitted before the undersigned that of the vocational expert's original recommendations, only the position of surveillance system monitor remains as a valid option for Plaintiff's employment.

[3] Dr. Joseph Ray, Plaintiff's treating orthopedist, produced volumes of medical information corroborating her allegations of disabling pain, including a Clinical Assessment of Pain form that indicated the presence of "chronic disabling pain." (Tr. 289-290.) Kristjan Frioriksson, a physical therapist, noted a lack of improvement in Plaintiff's symptoms despite six therapy sessions ending on October 17, 2005, and specifically opined that she believed the Plaintiff's subjective pain complaints because of the presence of "involuntary muscle contractions" associated with the pain reflex. (Tr. 169.) Finally, Dr. William Fleet, a neurologist, noted the presence of moderate carpal-tunnel syndrome on the right extremity, and offered the opinion that Plaintiff's pain complaints were indeed consistent with lumbar radiculopathy. (Tr. 183-192.)

no lifting over 10 to 15 pounds; occasionally carrying up to ten pounds; sitting for up to six hours; standing or walking for up to four hours with occasional bending, squatting, crawling, climbing or reaching; and no use of her arms for repetitive action such as pushing or pulling of arms controls and fine manipulation." (Tr. 20.) In Dr. Fontana's PCE, however, he indicates that Plaintiff is able to sit for a total of *somewhere between four to six hours total*, as the circular mark he employed on the questionnaire encompasses the integers 4, 5, and 6 in the relevant category. (Tr. 209.) Dr. Fontana made similar marks regarding Plaintiff's ability to stand and walk, with those circles including integers three and four– meaning the ALJ's statement that Plaintiff can stand or walk for four hours each workday is also erroneously reductive. More obviously erroneous is the ALJ's statement that the doctor limited Plaintiff to no lifting "over 10 to 15 pounds," even though the PCE sheet is devoid of any such category (the options are either up to 5 lbs., 6-10 lbs., and then 11-20 lbs. and up). Crucially, Dr. Fontana clearly marked the box indicating that Plaintiff can only occasionally lift *six to ten pounds*, and entirely proscribed Plaintiff from lifting a weight greater than that range– a fact significantly at odds with the ALJ's determination of Plaintiff's RFC.[4]

The ALJ's RFC determination, then, is unsupported by substantial evidence. It is,

---

[4] Additionally, the only remaining viable position of employment mentioned by the VE, "Surveillance System Monitor," entails "sitting most of the time," but it is unclear, based on the PCE from Dr. Fontana on which the ALJ relied for his RFC determination, that Plaintiff can indeed sit for more than 4 hours of the workday. This uncertainty should also be resolved on remand. DICTIONARY OF OCCUPATIONAL TITLES 379.367-010 (4th ed. 1991.)

of course, a social security maxim that an ALJ commits reversible error at step five if he relies on VE testimony that is unsupported by such evidence. See, *e.g., Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985). Additionally, while the plaintiff bears the burden of persuasion through the first four steps of the sequential evaluation process, the burden shifts to the Commissioner at step five to prove by a preponderance of the evidence that there are a significant number of jobs in the national economy that the claimant is able to perform. *See, e.g., Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987); *Gibson v. Heckler*, 762 F.2d 1516, 1518 (11th Cir. 1985). According to the Eleventh Circuit, the ALJ "must pose a hypothetical question which comprises all of the claimant's impairments" in order for the testimony of a VE to constitute substantial evidence. *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999) *superseded by statute on other grounds as recognized in Leonard v. Astrue*, 487 F.Supp.2d 1333 (M.D.Fla. 2007). Because Plaintiff's RFC was erroneous, the VE testimony "necessarily failed to incorporate all of Plaintiff's functional limitations." *Hernandez v. Astrue*, 2009 WL 210722 at *14 (M.D.Fla.).[5] *See also Coleman v. Barnhart*, 264 F.Supp.2d 1007 (S.D.Ala. 2003); *Pendley v. Heckler*, 767 F.2d 1561, 1562 (11th Cir. 1985) (stating that an ALJ must pose hypothetical questions to the VE that are supported by substantial evidence); *Griffin v. Astrue*, 2008 WL 2782719 (M.D.Ala.).

---

[5] While the undersigned understands that unpublished jurisprudence is not entitled to controlling weight, the use of such cases may still aid the understanding of or provide an explanation regarding the reasoning behind decisions central to the disposition of the current case.

The undersigned particularly notes that he does not find this error to be harmless for a plethora of reasons. First, it is clear that Dr. Fontana's PCE limits Plaintiff to something less than sedentary work, as that work is defined in the regulations. SSR 96-9p defines "sedentary work":

> The ability to perform the full range of sedentary work requires the ability to lift no more than 10 pounds at a time and occasionally to lift or carry articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. "Occasionally" means occurring from very little up to one- third of the time, and would generally total no more than about 2 hours of an 8-hour workday. Sitting would generally total about 6 hours of an 8-hour workday. Unskilled sedentary work also involves other activities, classified as "nonexertional," such as capacities for seeing, manipulation, and understanding, remembering, and carrying out simple instructions.

*Id.*

Also, SSR 83-12, in a section titled "Alternate Sitting and Standing," has this to say about the sit/stand option as it relates to sedentary work:

> In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. The individual may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting. Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work. (Persons who can adjust to

13

> any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work.)
> There are some jobs in the national economy--typically professional and managerial ones--in which a person can sit or stand with a degree of choice. If an individual had such a job and is still capable of performing it, or is capable of transferrng work skills to such jobs, he or she would not be found disabled. However, most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand, a VS should be consulted to clarify the implications for the occupational base.

*Id.*

Based on Dr. Fontana's PCE and the ambiguity therein, it is entirely unclear whether Claimant can perform the job of surveillance system monitor as that job is performed in the national economy without having a sit/stand option available to her. Based on the range of values the doctor selected for each of her abilities to sit, stand, and walk over an 8-hour workday, Claimant could either scrape by the requirements of sedentary work as they are defined in the regulations or be terminated after a deficient first day of such hypothetical employment. This uncertainty is unacceptable considering the goals of our nation's Social Security Administration and must be addressed on remand.

## **CONCLUSION**

In view of the foregoing, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff benefits be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89,

111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision.  Upon remand, the Commissioner should: (1) reassess Plaintiff's RFC with proper consideration of the ambiguities contained in Dr. Fontana's PCE with a discussion of the evidence supporting his assessment; (2) obtain VE testimony based on a hypothetical that accurately reflects Plaintiff's new RFC to determine whether Plaintiff can perform the job of surveillance system monitor given her limitations; and (3) conduct such further proceedings as the Commissioner deems appropriate.  The remand pursuant to sentence four of § 405(g) makes the plaintiff a prevailing party for the purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *Shahala v. Schaefer*, 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), and terminates this court's jurisdiction over this matter.

**DONE AND ORDERED** this 19th day of February, 2009.

        s/WILLIAM E. CASSADY
        UNITED STATES MAGISTRATE JUDGE